UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

FILED
JUL 14 2015
DAVID CREWS, CLERK
BY _____ Deputy

UNITED STATES OF AMERICA

v.

TAMMI HENDERSON PALASINI
a/k/a GINA PALASINI

CRIMINAL NO. 3:15CR 084
18 U.S.C. § 1341
18 U.S.C. § 1343
18 U.S.C. § 1956(a)(2)(A)

## INDICTMENT

The Grand Jury charges that:

### COUNT ONE

1. From on or about February 2009, through on or about July 2012, in the Northern District of Mississippi and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, devised and executed a scheme to defraud veterans, senior citizens, and their families, and to obtain, thereby, money by means of false and fraudulent pretenses, representations and promises.

### BACKGROUND

2. During all times relevant to this Indictment, PALASINI was in business selling accident, life and health insurance, although her license with the State of Mississippi to sell insurance expired on or about December 2006.

3. PALASINI defrauded senior citizens by means of creating fraudulent businesses to purportedly assist seniors, and/or members of their family, in receiving benefits from Medicaid and the United States Department of Veterans Affairs (VA).

4. PALASINI formed fraudulent businesses including Veteran's Pension Planners of

1

America, Inc. (VPPA, INC.), Medicaid Planning Specialists, Inc. (MPS), Medicaid Planning Resources, Inc. (MPR), and Senior Benefits Consulting Group, Inc. (SBCG). The businesses incorporated by PALASINI were ostensibly formed to assist veterans in applying for VA benefits and to provide growth for the retirement savings of veterans and their families.

5. PALASINI advised the veterans and their families to diversify their assets by investing money in annuities over which she had control to insure their eligibility for VA benefits.

6. PALASINI fraudulently represented that she was investing her clients' money in annuities and promised substantial returns on their investments.

7. PALASINI forged the signatures of insurance sales agents John Polasini and Debbie Killen on annuity investment documents at a time when she was not licensed to sell insurance products.

8. PALASINI often used the U.S. Mail as a means of providing her clients with application forms required for determination of their rights to receive VA benefits.

9. PALASINI mailed correspondence to her clients explaining how they were to divest themselves of money to insure eligibility for VA benefits.

10. PALASINI mailed numerous checks to her clients that were identified by PALASINI as interest payments, thus lulling her clients to believe they were gaining legitimate interest on their investments.

11. PALASINI, on several occasions, made out checks to her clients purporting to be interest payments on investments which were returned due to insufficient funds.

12. Throughout the scheme, PALASINI used money invested by newly acquired clients to make what established clients thought were payments for interest earned on their

investments or Medicaid payments.

13. PALASINI used money invested by her clients for her personal gain and benefit, which among other expenditures were: a lavish family vacation in California, a race car for her son, and operating capital for her businesses.

14. PALASINI would transfer money from one state to another by wire transfer and direct her clients to transfer their money to her accounts, by wire transfers routed through the Federal Reserve System, located in states other than Mississippi.

**THE FOLLOWING WERE PARTS OF THE SCHEME:**

PALASINI would and did cause Ethel Wright (Mrs. Wright), wife of Bobby Wright (Mr. Wright), a retired pastor and Alzheimer's patient, to purchase an annuity in the amount of $194,000 from Old Mutual Insurance Company through PALASINI doing business as Medicaid Planning Resources, Inc. (MPR). Upon the advice of PALASINI, the annuity was purchased by Mrs. Wright with money from their life savings. PALASINI further advised the Wrights to diversify their assets to insure eligibility for Medicaid benefits for the future care of Mr. Wright. It was later learned that PALASINI had not reported the $194,000 annuity, a reportable asset, to Medicaid as she had indicated to Mrs. Wright. This transfer of assets resulted in the loss of Medicaid benefits for the Wrights. Instead of purchasing the annuity for Mrs. Wright, as agreed upon, PALASINI deposited $20,000 of the $194,000 into a non-interest bearing account and paid Mrs. Wright the equivalent of 10% interest each month by mail. The monthly payments to Mrs. Wright gave the appearance of interest having accrued on her investment that was supposed to have been purchased by PALASINI on her behalf.

PALASINI would and did cause Joe P. Babb (Babb) to purchase an annuity from Old Mutual Life Insurance Company through her business, Medicaid Planning Specialists, Inc.

(MPS). The initial investment in the annuity by Babb was $250,394.39. PALASINI advised Babb that the annuity would earn 10% interest annually for five years. Upon questioning PALASINI, members of the Babb's family were advised that the $250,394.39 was, in fact, not invested in an annuity as she had represented to Babb, but his money had been invested in nursing homes. After the passing of Babb, his son, Ken Babb (Ken), on behalf of himself, and his brother, Joey A. Babb (Joey), attempted to withdraw the $250,394.39 invested by their father with PALASINI. Pursuant to a death benefit contract entered into with PALASINI, Ken and Joey were to be paid 24 equal payments with interest. The payments were made by PALASINI from April 2008 to July 2012, and PALASINI ceased making the agreed upon payments to the Babb brothers, leaving $108,406 still owing.

PALASINI would and did cause Jason Dillon (Jason), son of Judy Dillon (Judy), pursuant to the power of attorney Jason held for the benefit of his mother, to invest $100,000 of his mother's savings by issuing a check payable to PALASINI, doing business as MPR, Inc. PALASINI represented to Jason that his mother's investment of $100,000 would accrue an annual interest rate of 8.74%, and a $10,000 bonus for a gain of $119,614. However, the annuity was never purchased and the money was never invested by PALASINI for the benefit of Judy. Judy's investment was used by PALASINI for her personal benefit and the benefit of MPR, Inc.

PALASINI would and did cause United States Air Force Veteran, Grady Porch (Mr. Porch), and his wife, Ruth Porch (Mrs. Porch), to fraudulently transfer their assets to a corporation formed in their family name to qualify for VA compensation and pension benefits. According to PALASINI, their transfer of assets would accomplish reducing the Porch's net worth to approximately $80,000. PALASINI advised Mr. and Mrs. Porch that the reduction in their net worth would ensure their eligibility for VA benefits. Based on PALASINI's advice,

Mr. and Mrs. Porch provided PALASINI with $330,000 to deposit in the Grady and Ruth Porch Family, LLC. Mr. and Mrs. Porch's investment was made in two (2) separate transactions of personal checks deposited into PALASINI's VPPA, INC. account. The funds provided by Mr. and Mrs. Porch were to be invested in an annuity that, according to PALASINI, would earn an annual rate of return of 10%. Mr. and Mrs. Porch never received statements or correspondence from VPPA, INC. regarding the status of their annuity or interest it was to accrue. PALASINI then mailed Mr. and Mrs. Porch's Application for Compensation and Pension to the VA. Subsequently, PALASINI informed Mr. and Mrs. Porch that their two (2) annuities had "fallen through", and that she had spent the money they entrusted to her for her personal gain.

PALASINI would and did cause Betty Jo Shaffer (Shaffer), a nursing home resident suffering from Alzheimer's, to invest $100,000 by cashier check to PALASINI doing business as VPPA, INC. PALASINI advised Shaffer that her money would be invested in a safe interest-bearing account, and her money would be accessible whenever needed. On a later date, PALASINI acknowledged she had spent Shaffer's money for her own benefit.

PALASINI would and did cause Connie "Mack" Gurley (Mr. Gurley) to make out a personal check for $100,000 to PALASINI, doing business as VPPA, INC., for the benefit of the Gurley Family, LLC. According to PALASINI, the $100,000 check was to be deposited into an account guaranteed to accrue 10% interest annually. PALASINI advised Mr. Gurley that as a result of his investment, he would receive a monthly income of $2,019 from the VA for the remainder of his life. When the Application for Benefits was mailed to the VA by PALASINI, it was denied due to Mr. Gurley's income exceeding the allowable limit for a veteran to receive the requested benefit. Upon learning of the denial of his benefits, Mr. Gurley inquired into the status of the escrow account PALASINI was to have opened on his behalf. Since PALASINI did not

open an escrow account as previously represented to Mr. Gurley. Mr. Gurley submitted a withdrawal form for his money as instructed by PALASINI. However, PALASINI had misappropriated the funds for her own benefit and use. Mr. Gurley was never re-paid the money he entrusted to PALASINI or interest he was to earn on his investment.

### EXECUTION OF SCHEME

On or about February 11, 2009, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joseph Abel Babb, 101 Spring Oak Drive, Madison, Mississippi 39110, which envelope contained a letter of correspondence, copies of the Election Form for Withdrawal of Funds and a check purported to be a payment of interest earned for January 2009 in the amount of $3,321.76, devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being earned on Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

### COUNT TWO

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about May 1, 2009, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joseph Abel Babb, 101 Spring Oak Drive, Madison, Mississippi 39110, which envelope contained a check, in the amount of $5,184.85, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being

earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT THREE

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about July 28, 2009, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joseph Abel Babb, 101 Spring Oak Drive, Madison, Mississippi 39110, which envelope contained a check, in the amount of $3,310.76, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT FOUR

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about September 5, 2009, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joseph Abel Babb, 101 Spring Oak Drive, Madison, Mississippi 39110, which envelope contained a check, in the amount of $5,184.85, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate

interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT FIVE

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about October 14, 2009, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joseph Abel Babb, 101 Spring Oak Drive, Madison, Mississippi 39110, which envelope contained a check, in the amount of $5,184.85, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT SIX

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about December 17, 2009, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joseph Abel Babb, 101 Spring Oak Drive, Madison, Mississippi 39110, which envelope contained a check, in the amount of $10,369.70, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate

Case: 3:15-cr-00084-SA-SAA Doc #: 1 Filed: 07/14/15 9 of 15 PageID #: 9

interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT SEVEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about July 29, 2010, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joey Babb, 101 Spring Oak Drive, Madison, Mississippi 39110, which envelope contained two (2) cashier checks, in the amounts of $18,665.30 and $8,494.85, purported to be payments for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT EIGHT

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about November 21, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Mack Gurley, 6411 Rolling Hills Drive, Olive Branch, Mississippi 38654, which envelope contained a letter of correspondence, and forms regarding Gurley Family, LLC that were completed by PALASINI, on behalf of Mack Gurley, devised to deceive Mack Gurley by

creating a false impression that legitimate interest was being earned on his investment all in violation of Title 18, United States Code, Section 1341.

## COUNT NINE

1.  The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2.  On or about April 18, 2012, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Mack Gurley, 6411 Rolling Hills Drive, Olive Branch, Mississippi 38654-9596, which envelope contained a letter of correspondence, and Gurley's Physician's Exam for Housebound Status, devised to deceive Mack Gurley by creating a false impression that legitimate interest was being earned on his investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT TEN

1.  The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2.  On or about May 15, 2012, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joey Babb, 202 St. Pierce Cove, Madison, Mississippi 39110, which envelope contained a check, in the amount of $2,000, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT ELEVEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about May 29, 2012, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, after the check sent on May 15, 2012 was returned for insufficient funds, did cause to be delivered by United States mail, an envelope addressed to Joseph Abel Babb, 202 St. Pierce Cove, Madison, Mississippi 39110, which envelope contained a cashier's check, in the amount of $2,000, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT TWELVE

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about July 19, 2012, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the above-described scheme, did knowingly cause to be delivered by United States mail according to the directions thereon, an envelope addressed to Joey Babb, 202 St. Pierce Cove, Madison, Mississippi 39110, which envelope contained a check, in the amount of $2,000, purported to be a payment for interest earned on the Joe P. Babb's investment devised to deceive Joseph Abel Babb by creating a false impression that legitimate interest was being earned on the Joe P. Babb's investment, all in violation of Title 18, United States Code, Section 1341.

## COUNT THIRTEEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about July 6, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, for the purpose of executing the above-described scheme, did knowingly and intentionally cause to be transmitted by means of a wire communication through the facilitation of computer servers located at the Federal Reserve Bank in Memphis, Tennessee, $340,000 to be delivered from Jimmy Toland in interstate commerce, that is; an Electronic Funds Transfer (EFT) of funds from Bank Plus to Veteran's Pension Planners of America, Inc. (VPPA, Inc.) checking account number xxxx3524, which was then misappropriated by PALASINI, all in violation of Title 18, United States Code, Section 1343.

## COUNT FOURTEEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about October 3, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, for the purpose of executing the above-described scheme, did knowingly and intentionally cause to be transmitted in interstate commerce by means of a wire communication through the facilitation of computer servers located at the Federal Reserve Bank in Memphis, Tennessee, that is; an Electronic Funds Transfer (EFT) of funds fraudulently obtained from her clients, from VPPA, Inc. checking account number xxxx3524 to VPPA, Inc. checking account number xxxxx2401 in the amount of $40,000, which was then misappropriated by PALASINI, all in violation of Title 18, United States Code, Section 1343.

## COUNT FIFTEEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about October 4, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, for the purpose of executing the above-described scheme, did knowingly and intentionally cause to be transmitted in interstate commerce by means of a wire communication through the facilitation of computer servers located at the Federal Reserve Bank in Memphis, Tennessee, that is; an Electronic Funds Transfer (EFT) of funds fraudulently obtained from her clients, from VPPA, Inc. checking account number xxxxx2401 to VPPA, Inc. checking account number xxxx3615 in the amount of $2,500, which was then misappropriated by PALASINI, all in violation of Title 18, United States Code, Section 1343.

## COUNT SIXTEEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about October 5, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, for the purpose of executing the above-described scheme, did knowingly and intentionally cause to be transmitted in interstate commerce by means of a wire communication through the facilitation of computer servers located at the Federal Reserve Bank in Memphis, Tennessee, that is; an Electronic Funds Transfer (EFT) of funds fraudulently obtained from her clients, from VPPA, Inc. checking account number xxxxx2401 to VPPA, Inc. checking account number xxxx3524 in the amount of $3,000, which was then misappropriated by PALASINI, all in violation of Title 18, United States Code, Section 1343.

## COUNT SEVENTEEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about October 13, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, for the purpose of executing the above-described scheme, did knowingly and intentionally cause to be transmitted in interstate commerce by means of a wire communication through the facilitation of computer servers located at the Federal Reserve Bank in Memphis, Tennessee, that is; an Electronic Funds Transfer (EFT) of funds fraudulently obtained from her clients, from her VPPA, Inc. checking account number xxxx3524 to VPPA, Inc. checking account number xxxx3615 in the amount of $200,000, which was then misappropriated by PALASINI, all in violation of Title 18, United States Code, Section 1343.

## COUNT EIGHTEEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. On or about October 20, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI (PALASINI), defendant, for the purpose of executing the above-described scheme, did knowingly and intentionally cause to be transmitted in interstate commerce by means of a wire communication through the facilitation of computer servers located at the Federal Reserve Bank in Memphis, Tennessee, that is; an Electronic Funds Transfer (EFT) of funds fraudulently obtained from her clients, from VPPA, Inc. checking account number xxxx3615 to VPPA, Inc. checking account number xxxxx2401 in the amount of $102,500, which was then misappropriated by PALASINI, all in violation of Title 18, United States Code, Section 1343.

## COUNT NINETEEN

1. The Grand Jury re-alleges paragraphs 1 through 14 of Count One.

2. From on or about July 6, 2011, through on or about October 20, 2011, in the Northern District of Mississippi, and elsewhere, TAMMI HENDERSON PALASINI, a/k/a GINA PALASINI, defendant, for the purpose of executing the scheme described above, did knowingly, intentionally and unlawfully engage in transmitting and transferring monetary instruments and funds derived from unlawful activity knowing that the monetary instrument and funds involved in the transmission and transfer represented the proceeds of the specified unlawful activity and knowing such transmissions and transfers were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

A TRUE BILL

_Felicia C. Cub_
UNITED STATES ATTORNEY

/s/ Signature Redacted
FOREPERSON